894 A.2d 1260

**Henry McNEIL, Jr., Appellant**

**v.**

**Barbara McNeil JORDAN and Henry A. Jordan, Appellees.**

Supreme Court of Pennsylvania.

Argued April 15, 2004.

Decided March 21, 2006.

414

Karl L. Prior, King of Prussia, Aaron Richard Krauss, James Frances Mannion, King of Prussia, H. Robert Fiebach, Patrick J. O'Connor, Philadelphia and Gaele M. Barthold, for Henry McNeil, Jr.

Clifford Alan Rieders, for PA Trial Lawyers Association.

Dara Beth Less, William T. Hangley, Philadelphia, for Jordan et al.

Before: CAPPY, C.J., CASTILLE, NIGRO, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Justice BAER.

Henry S. McNeil, Jr. (Henry Jr.), appeals the order of the Superior Court affirming the order of the Court of Common Pleas of Montgomery County, which dismissed his action alleging intentional interference with testamentary expectancy. The trial court dismissed the action with prejudice when Henry Jr. declined the court's invitation to file an amended complaint after it denied his request for pre-complaint discovery. In refusing to amend his complaint, Henry Jr. made clear that, given the trial court's prior ruling dismissing his complaint without prejudice, and absent pre-complaint discovery, he would be unable to survive a demurrer. Thus, he sought to challenge the trial court's refusal to permit pre-complaint discovery through the appellate process. We granted allocatur to clarify the parameters of pre-complaint discovery in Pennsylvania. Based upon the reasoning stated in Parts I, II, III, and V, which command a majority of the justices participating in this case, we reverse the order of the

Superior Court and remand the matter to the Montgomery County Court of Common Pleas for further proceedings as directed in Part V.

## I.

Henry S. McNeil, Sr. (Henry Sr.), and Lois Fernley McNeil had four children, all now grown: Appellant Henry Jr.; Appellee Barbara McNeil Jordan (Barbara), who is married to Appellee Henry A. Jordan (collectively, the Jordans); and non-parties Marjorie McNeil Findlay and Robert Douglas McNeil. Henry Sr. was the president of McNeil Laboratories, Inc., the maker of Tylenol and other medicines. In 1959, Johnson and Johnson purchased McNeil Laboratories in exchange for stock worth approximately $33 million, enriching Henry Sr. and Lois, each of whom proceeded to create identical trusts for each of their four children.

For reasons not of record, Henry Jr.'s relationships with his father and mother deteriorated during the 1970s, causing a prolonged, if not permanent, estrangement. Consistent therewith, in his 1979 will, Henry Sr. made substantial bequests to Barbara, Marjorie, and Robert, but excluded Henry Jr. Henry Sr. died in 1983 without having reconciled with Henry Jr.[1]

The bulk of Henry Sr.'s estate funded a marital trust for Lois's lifetime benefit. Henry Sr. provided that upon Lois's death the proceeds of the marital trust would be used to create separate trusts for the couple's children and their families, exclusive of Henry Jr. Henry Sr., however, gave Lois a general power of appointment permitting her to modify this testamentary scheme.[2]

1. Henry Jr. maintains that he and his father were on the "verge of reconciliation" at the time of his father's death. However, Henry Jr. concedes that reconciliation had not been accomplished at the time his father passed away. Henry Sr.'s will indicated that he had amply provided for Henry Jr. by means other than through his estate.

2. The record reflects that Lois was aware that Henry Sr.'s will made no provision for Henry Jr. and that her general power of appointment enabled her to alter that plan.

Henry Jr.'s contentions regarding his relationship with his mother after his father's death are somewhat inconsistent. Henry Jr. asserts that by the late 1980s, he and his mother had resumed a full relationship. In fact, he contends that during the ten years preceding her death in 1998, he had regular access to her. Simultaneously, however, Henry Jr. contends that the Jordans, motivated by their zeal for an increased share of Lois's estate, thwarted his reconciliation with Lois by limiting his access to her and controlling every aspect of her daily life, including prevailing upon her to discharge her independent counsel in favor of their preferred law firm.

Based on these conflicting factual premises, Henry Jr. asserts that prior to Lois's death, she expressed an intent to exercise her general power of appointment to equalize his and his siblings' inheritances, but, notwithstanding this expression of intent, Lois did not so act because of the Jordans' undue influence. Reading these contentions as consistently as possible, Henry Jr. appears to posit that the Jordans took all measures to discourage his relationship with Lois; they failed to the extent that Henry Jr. was able to restore a full relationship with her, but succeeded inasmuch as Lois never modified her estate plan to conform to her alleged intent to restore Henry Jr. to co-equal status with his siblings.

In December 1989, sometime after Henry Jr. claims to have reestablished a close relationship with her, Lois executed a new will. Lois then executed codicils thereto on March 21, 1990, December 8, 1992, and September 17, 1997, before passing away in 1998. Lois died with a personal estate of approximately $10 million, and the right, pursuant to her general power of appointment, to alter Henry Sr.'s direction that the $625 million remaining in the marital trust be distributed equally to all the couple's children except Henry Jr.

Lois exercised her general power of appointment to leave specific bequests to dozens of friends, employees, and charities. She also used the general power to make equal, but limited, specific distributions to each of the children's trusts, including Henry Jr.'s. She then made specific bequests to

Henry Jr. of $2 million, a 25% interest in her vacation home in the Bahamas, and the right to participate in a lottery with the other children to purchase the family estate.

Notwithstanding these various specific bequests and devises, a substantial amount of the $625 million in the marital trust remained, and Lois permitted this to pass through Henry Sr.'s residuary clause, resulting in equal shares passing to Henry Jr.'s three siblings, but in his receipt of none of this money. It also is noteworthy that Lois named Henry Jr.'s three siblings as co-executors but excluded Henry Jr. from this role.

Henry Jr. did not contest the will and its codicils. Nevertheless, he did obtain permission from his siblings in their capacities as co-executors to review a small portion of his mother's estate documents. Henry Jr. also hired private investigators to find evidence that Lois intended to change her will to his benefit. Ultimately, on March 9, 1999, Henry Jr. filed a Writ of Summons against the Jordans in their individual capacities in the Montgomery County Court of Common Pleas. The Jordans retained counsel, and on April 14, 1999, filed a Praecipe for a Rule requiring Henry Jr. to file a complaint within twenty days.

Henry Jr. filed a complaint on May 4, 1999, asserting a claim for the tort of intentional interference with testamentary expectancy against the Jordans with respect to Lois's estate. The complaint alleged that Lois intended to distribute her probate assets and, through her general power of appointment, the balance of Henry Sr.'s marital trust equally among her children, and took affirmative steps to implement this plan, but was thwarted by the Jordans' undue influence over her.

The Jordans filed preliminary objections to the complaint including a demurrer asserting that Henry Jr. failed to aver that Lois intended to change her will to provide a described benefit to Henry Jr., the first element of a claim for tortious interference with testamentary expectancy.[3] The trial court

3. The elements of the tort are:

observed that Henry Jr. had pleaded only that Lois had stated in 1983, six years prior to execution of her will, that if Henry Jr. re-established a positive relationship with her, she would change her will to provide for him. The court reasoned that this was a conditional statement of intent, and legally insufficient to meet the first element of the tort of intentional interference with testamentary expectancy. Accordingly, on July 11, 2000, the court granted the Jordans' preliminary objections, and dismissed Henry Jr.'s complaint without prejudice, providing him thirty days to file an amended complaint.

Following dismissal of his original complaint without prejudice, Henry Jr. sought discovery with the averred expectation that it would enable him to prepare an amended complaint stating a cause of action. Henry Jr. sought from Lois's lawyers her estate planning files and all documents relating to her testamentary intent generated from 1983 to 1998; all documents referring or relating to Henry Jr.; and all billing records for services rendered with respect to Lois's estate planning during this fifteen-year period. The Jordans opposed Henry Jr.'s discovery requests, contending that they amounted to a "fishing expedition."

In an attempt to broker a compromise, the court proposed to grant Henry Jr.'s lawyers unlimited access to Lois's estate planning files to search for any indication that Lois ever expressed an intent to equalize Henry Jr.'s share. This review was to be for the attorneys only, and the information revealed would remain confidential. Prior to allowing any documents to be copied or used in the litigation, the court would determine whether the material was relevant to Lois's intent regarding Henry Jr. Henry Jr. rejected this compro-

1. The testator indicated an intent to change her will to provide a described benefit for plaintiff;
2. The defendant used "fraud, misrepresentation or undue influence" to prevent execution of the intended will;
3. The defendant was successful in preventing the execution of a new will; and
4. But for defendant's conduct, the testator would have changed his will.

*Cardenas v. Schober*, 783 A.2d 317, 326 (Pa.Super.2001) (relying on *Marshall v. DeHaven*, 209 Pa. 187, 58 A. 141 (1904)).

mise, choosing instead to file an amended motion for pre-complaint discovery.

Henry Jr. argued that he sought discovery in good faith and with a reasonable factual basis, and proffered the following underlying contentions: (1) in the mid–1990s, Henry Jr. spoke with a lawyer who had previously represented Lois in estate matters and, as a result of that conversation, Henry Jr. understood that he would be treated equally; (2) Henry Jr. was told in the mid–1990s that one of his siblings encouraged Lois to treat him equally; and (3) in the 1990s someone told Henry Jr. that one of his siblings had told someone else that Lois had included Henry Jr. in her will for "his portion" of the family wealth.

The trial court found nothing in the new factual averments to support the allegation that Lois expressed an intention to equalize Henry Jr.'s inheritance with that of his siblings, characterizing his averments in support of his discovery request as "vague." The court reasoned that it would be inappropriate to permit Henry Jr. to discover otherwise confidential estate planning documents "without a reasonable basis" to support his claim. Accordingly, on January 8, 2002, the court denied Henry Jr.'s motion for pre-complaint discovery and offered Henry Jr. thirty days to file an amended complaint. Henry Jr., however, advised the court that he would not amend his complaint absent the requested pre-complaint discovery. Accordingly, by order dated January 23, 2002, the court dismissed Henry Jr.'s action with prejudice.

Henry Jr. timely appealed to the Superior Court, arguing that the trial court erred in failing to permit the pre-complaint discovery he required to file a legally sufficient complaint. In a published opinion, the Superior Court reviewed seven common pleas court decisions addressing pre-complaint discovery. *See McNeil v. Jordan*, 814 A.2d 234, 243–45 (Pa.Super.2002) (discussing, *inter alia*, *Vartan Enters., Inc., v. Susquehanna Township*, 41 Pa. D. & C.4th 534 (C.P. Dauphin 1998); *Potts v. Consol. Rail Corp*, 37 Pa. D. & C.4th 196 (C.P. Allegheny 1998); *Anderson v. PennDOT*, 47 Pa. D. & C.3d 429 (C.P. Cumberland 1987); *Wable v. Watkins*, 47 Pa. D. & C.3d 485

(C.P. Somerset 1986); *Hall v. Baltic,* 12 Pa. D. & C.3d 647
(C.P. Beaver 1978); *Crown Mktg. Equip. v. Provident Nat'l
Bank,* 3 Pa. D. & C.3d 364 (C.P.Phila.1977); *In re Evans
Estate,* 15 Pa. D. & C.2d 619 (C.P. Luzerne 1958)). The
Superior Court concluded that it was "more persuaded by the
case law setting reasonable limits on pre-complaint discovery
than the case law permitting a more liberal allowance of [such]
discovery." *Id.* at 245. Specifically, the court held that pre-
complaint discovery is permissible only if the plaintiff has set
forth a *prima facie* case, but, nevertheless, cannot prepare
and file a complaint without discovery. Noting that the first
element of the tort of intentional interference with an inheri-
tance is that the testator indicated an intent to change her will
to provide a described benefit to the plaintiff, *Marshall,* 58 A.
at 142, the court found that Henry Jr. failed to allege any
reasonable basis upon which one could conclude that Lois had
such intent. Thus, the court found that Henry Jr. failed to set
forth a *prima facie* case. *McNeil,* 814 A.2d at 246. Accord-
ingly, the Superior Court concluded that to grant Henry Jr.'s
discovery request would amount to authorizing the prohibited
"fishing expedition." *Id.* Accordingly, the Superior Court
affirmed the trial court's dismissal with prejudice of Henry
Jr.'s complaint. Henry Jr. filed a petition for allocatur chal-
lenging only the Superior Court's refusal to overturn the trial
court's ruling denying pre-complaint discovery. We granted
allocatur to consider this issue.

## II.

Before reaching the merits of the pre-complaint discovery
question,[4] however, we must consider two issues raised by the
Jordans contesting our jurisdiction. First, the Jordans con-
tend that Henry Jr.'s argument concerning pre-complaint
discovery has not been preserved properly to permit this
Court's review. Alternatively, the Jordans argue that, even
were we to reverse and remand for pre-complaint discovery,

4. While we recognize that in this case Henry Jr. seeks "pre-amended
complaint discovery," for ease of reference we will refer to his request
as one for "pre-complaint discovery."

Henry Jr. would be barred from filing a new complaint pursuant to the doctrine of *res judicata* and under the applicable two-year statute of limitations.[5] Thus, the Jordans contend that this Court should never reach the discovery issue.

■ As described above, we are faced with the consequence of a series of three interrelated orders. First, the trial court granted the Jordans' demurrer and dismissed Henry Jr.'s complaint without prejudice to file an amended complaint. Thereafter, the court denied Henry Jr.'s motion seeking pre-complaint discovery. Following denial of his discovery motion, the trial court, with its third order, dismissed Henry Jr.'s complaint with prejudice providing as follows:

> AND NOW, this 23rd day of January, 2002, plaintiff, Henry S. McNeil, Jr., has advised the Court and opposing counsel that he will not amend his complaint in the absence of discovery sought by the amended motion for leave to conduct discovery in aid of preparation of amended complaint. Therefore, this action is dismissed with prejudice.

Tr. Ct. Order, 1/23/02.

Henry Jr. then timely appealed the trial court's dismissal with prejudice of his complaint to the Superior Court, before which he raised two questions. The first challenged the trial court's denial of pre-complaint discovery; the second argued that Henry Jr.'s unamended complaint set forth a cause of action and thus the trial court dismissed it in error. The Superior Court decided that the trial court acted within its discretion in denying pre-complaint discovery and was correct as a matter of law in dismissing Henry Jr.'s complaint for failure to state a cause of action. Henry, Jr. then timely sought allocatur from the Superior Court's order affirming the trial court's order dismissing Henry Jr.'s complaint with prejudice raising as his sole specific contention of error the Superior Court's holding disallowing pre-complaint discovery.

The Jordans initially assert that Henry Jr.'s appeal to the Superior Court did not encompass pre-complaint discovery, and therefore waived the issue. Their somewhat convoluted argument begins from the premise that the litigation over pre-

---

5. *See* 42 Pa.C.S. § 5524 (establishing a two-year statute of limitations).

complaint discovery post-dated the filing of the only complaint in this case, and therefore the order dismissing that complaint without prejudice could not encompass within it the rejection of any asserted right to pre-complaint discovery. The Jordans then contend that the final order dismissing Henry Jr.'s complaint with prejudice effected no more than a reiteration of the first dismissal order, and thus related back to it. Thus, the argument coalesces: while Henry Jr. takes the instant appeal in form from the order dismissing his complaint with prejudice, in substance it arises from the initial dismissal without prejudice order. Because entry of this order occurred before any contemplation of pre-complaint discovery, logically its entry could not have preserved the pre-complaint discovery issue for our consideration.[6]

The language of the trial court's order, as quoted above, clearly reflects the centrality of the pre-complaint discovery issue to the trial court's decision to dismiss. Further, we note that "a notice of appeal filed from the entry of judgment will be viewed as drawing into question *any prior non-final orders that produced the judgment.*" *K.H. v. J.R.*, 573 Pa. 481, 826 A.2d 863, 871 (2003) (emphasis added); *see id.* at 870 (citing 16A WRIGHT, MILLER & COOPER, 16A FEDERAL PRACTICE AND PROCEDURE § 3949.4 (3d ed.1999)) (finding in Pennsylvania law the equivalent of the federal " 'merger rule,' which treats any prior interlocutory orders as merging into the final judgment"); *accord Elfman Motors, Inc., v. Chrysler Corp.*, 567 F.2d 1252, 1253 (3d Cir.1977) (citing 9 MOORE'S FEDERAL PRACTICE 755 (2d ed.1975)); *Morningstar v. Hallett*, 858 A.2d 125, 126 & n. 1 (Pa.Super.2004) (applying *K.H.*). The policy served by this aspect of Pennsylvania practice is manifest.

To endorse the Jordans' view on this issue would require us to disregard the extensive litigation between the dismissal of

6. The Jordans suggest that Henry Jr. instead should have filed an amended complaint, as invited by the trial court's initial order dismissing without prejudice, and included in that amended complaint a request for discovery. Only then, they argue, would the pre-complaint discovery issue be encompassed by the final order. We are uncertain how a request for discovery can be incorporated into a complaint. Because we reject the Jordans' entire premise, however, we find it unnecessary to examine further their dubious suggestion in this regard.

Henry Jr.'s complaint without prejudice and its dismissal with prejudice. The dismissal without prejudice was tailored explicitly to allow Henry Jr. to amend his complaint, and enabled his motion seeking pre-complaint discovery. All ensuing litigation turned on his discovery request, and the final order of dismissal with prejudice resulted from the trial court's refusal of pre-complaint discovery and Henry Jr.'s acknowledgment of his need for it. Moreover, the logical consequence of the Jordans' proposed solution to Henry Jr.'s procedural dilemma would require Henry Jr. (and, ostensibly, others similarly situated) to file an amended complaint notwithstanding his knowledge that such a complaint would fail to state a cause of action absent the requested pre-complaint discovery.[7] This would elevate form over substance to a degree we have consistently rejected. *See, e.g., Thatcher's Drug Store of W. Goshen, Inc., v. Consol. Supermkts, Inc.,* 535 Pa. 469, 636 A.2d 156, 159 n. 5 (1994) (holding that to find waiver of an issue on appeal, where it had been before the parties and fully litigated below, would impermissibly "elevate form over substance"). It has been unremittingly obvious to both parties, the trial court, the Superior Court, and now this Court that Henry, Jr.'s desire to take pre-complaint discovery has been the crucial issue in this case. The dismissal with prejudice of Henry Jr.'s complaint was a final order fairly encompassing the trial court's denial of pre-trial discovery, and preserving that issue for review before both the Superior Court and this Court.

This leaves us to consider the Jordans' alternative argument that, even should we find jurisdiction over this aspect of the discovery dispute, we nevertheless cannot review this case because *res judicata* and the statute of limitations

---

7. As noted, *supra,* upon the trial court's denial of his request for pre-complaint discovery, Henry Jr. filed an amended discovery request averring three new allegations to which his discovery request was addressed. The trial court signaled that these new averments would not affect its finding that Henry Jr.'s complaint was legally insufficient. Accordingly, Henry Jr. sought entry of a final order enabling him to appeal, a series of events explicitly acknowledged in the trial court's order dismissing Henry Jr.'s complaint with prejudice.

would bar Henry Jr. from filing an amended complaint in the wake of a favorable ruling. This circumstance, the Jordans claim, renders the discovery issue before us moot. We cannot agree.

Specifically, the Jordans argue that because Henry Jr. sought allocatur only on the discovery issue and not the sufficiency of the complaint, he waived his contention that his complaint was improperly dismissed. Thus, the Jordans posit that Henry Jr., having sued them, lost, and failing to appeal that loss, now is barred by *res judicata* from relitigating the same cause of action. Similarly, the Jordans argue that any new suit against them (*i.e.*, one asserting new claims based on the same facts) would be barred by the applicable two-year the statute of limitations.

■ Our foregoing discussion amply demonstrates that this appeal arises from the dismissal with prejudice of Henry Jr.'s appeal, which in turn hinged, by the trial court's explicit observation and any fair reading of the record, on the trial court's refusal to permit Henry Jr. to pursue pre-complaint discovery. Thus, pursuant to *K.H.*, the trial court's denial of Henry Jr.'s motion seeking pre-complaint discovery fairly was encompassed in the trial court's subsequent order dismissing his complaint with prejudice. *See K.H.*, 826 A.2d at 871. Accordingly, *res judicata* does not bar this Court's jurisdiction over this appeal. Moreover, under these circumstances, the relevant date of filing remains the date on which Henry Jr. filed his first complaint, and the statute of limitations does not moot the issue he raises before this Court. *See Connor v. Allegheny Gen. Hosp.*, 501 Pa. 306, 461 A.2d 600, 602 (1983) ("[I]f the proposed amendment [to the complaint] does not change the cause of action but merely amplifies that which has already been averred, it should be allowed even though the Statute of Limitations has already run."). Accordingly, we proceed to consider the appeal on its merits.

### III.

■ Generally, on review of an order concerning discovery, an appellate court applies an abuse of discretion standard.

*Commonwealth v. Ogrod,* 576 Pa. 412, 839 A.2d 294 (2003); *Smith v. Phila. Gas Works,* 740 A.2d 1200, 1202 (Pa.Cmwlth. 1999). In this case, however, the Superior Court ruled on a pure question of law when it required that a *prima facie* case be established as a prerequisite to pre-complaint discovery. Our caselaw long has held that questions of law are accorded full appellate review, and our consideration is plenary. *Rossa v. Workers' Comp. Appeal Bd. (City of Philadelphia),* 576 Pa.349, 839 A.2d 256, 259 (2003); *Sphere Drake Ins. Co. v. Phila. Gas Works,* 566 Pa. 541, 782 A.2d 510, 512 (2001); *Zieber v. Bogert,* 565 Pa. 376, 773 A.2d 758, 760 n. 3 (2001); *In re Estate of Wagner,* 791 A.2d 444 (Pa.Cmwlth.2002).

Henry Jr. asserts that the Superior Court's decision to permit pre-complaint discovery only when a plaintiff has shown a *prima facie* case announces an erroneous standard. Henry Jr. aptly points out that if a plaintiff can make a *prima facie* showing, by definition, he can survive a demurrer and thus does not require pre-complaint discovery. Conversely, if a plaintiff cannot make out a *prima facie* case, he requires pre-complaint discovery to avoid dismissal of his cause of action. Thus, such a plaintiff finds himself on the horns of an intractable dilemma: he must show a *prima facie* case to take pre-complaint discovery, yet he needs pre-complaint discovery to show a *prima facie* case. Henry Jr. argues that such a standard cannot be correct.

The Jordans respond that Henry Jr. is on a "fishing expedition" in that he has set forth no objective basis to support his bald contention of injury, and to permit him discovery under the facts of this case would create a world in which a litigant, without any reasonable good-faith basis, can subject parties and non-parties alike to unjustifiable, burdensome discovery. Accordingly, the Jordans maintain that the Superior Court appropriately ruled that pre-complaint discovery is prohibited until Henry Jr. establishes a *prima facie* case.

It is clear that the Pennsylvania Rules of Civil Procedure contemplate pre-complaint discovery. Pa.R.C.P. 4001(c) provides:

> Subject to the provisions of this chapter, any party may take the testimony of any person, including a party, by deposition upon oral examination or written interrogatories for the purpose of discovery, or for preparation of pleadings, or for preparation or trial of a case, or for use at a hearing upon petition, motion or rule, or for any combination of the foregoing purposes.

Thus, because a complaint is a pleading, *see* Pa.R.C.P. 1017,[8] discovery may be utilized in its preparation. Rule 4007.1 is directed to the procedure for the taking of depositions by oral examination. In subsection (c), the rule provides that if an action is commenced by a writ of summons and the plaintiff seeks to take a deposition to aid in preparation of a complaint, the plaintiff's notice of deposition shall include "a brief statement of the nature of the cause of action and of the matters to be inquired into." Pa.R.C.P. 4007.1(c). Thus, there is no question or controversy concerning the right of a party to take pre-complaint discovery. Indeed, because of the need for specificity in pleading under Rule 1019(a),[9] the provisions quoted above play a critically important role in Pennsylvania's pleading scheme. The obvious difficulty, however, is the lack of appellate caselaw establishing objective criteria for balancing the rights of a complaining party to take measured pre-complaint discovery with the right of a responding party to be free from intrusive and burdensome discovery demands lodged prior to the vesting of any right to respond to the premises underlying the plaintiff's suit.

This Court has yet to address directly the parameters of pre-complaint discovery.[10] Accordingly, we begin our analysis

**8.** "Except as provided by Rule 1041.1, the pleadings in an action are limited to a complaint, an answer thereto, a reply if the answer contains new matter or a counterclaim, a counter-reply if the reply to a counterclaim contains new matter, a preliminary objection and an answer thereto." Pa.R.C.P. 1017(a).

**9.** "The material facts on which a cause of action or defense is based shall be stated in a concise and summary form." Pa.R.C.P. 1019(a).

**10.** The Superior Court, however, has previously addressed this issue, both directly and indirectly. *See In Re Evans Estate, supra,* discussed at some length *infra; cf. Lombardo v. DeMarco,* 350 Pa.Super. 490, 504 A.2d 1256 (1985) (rejecting defendant's argument that the trial court

by reviewing various opinions of trial courts that have faced this issue over the past half-century. In *Rosenbaum Co. v. Tomlinson*, 7 Pa. D. & C.2d 500 (C.P. Allegheny 1956), plaintiff corporation brought suit contending that it was defrauded by defendant with the assistance of plaintiff's head cashier. Defendant filed preliminary objections seeking more specificity in pleading, and plaintiff then sought to depose the cashier before filing an amended complaint. The cashier invoked her Fifth Amendment rights, and plaintiff voluntarily discontinued the case. Later, plaintiff initiated a new action by filing a writ of summons and a notice of deposition directed to the head cashier. Defendant moved for a protective order. At that time, the rules permitting pre-complaint discovery required that it "substantially aid in the preparation of the pleadings." [11] The court opined that broad discovery should be permitted, but that the propriety thereof should focus on whether the discovery would substantially aid in the preparation of a pleading or, rather, aimed to determine whether a cause of action existed in the first instance. If plaintiff legitimately sought discovery to substantially aid in preparation of the pleadings, the discovery should be permitted; but if plaintiff was merely fishing for a cause of action, discovery should be disallowed. Discovery was denied.

In *Lutsko v. Sawka*, 27 Pa. D. & C.2d 246 (C.P. Lehigh 1962), the court faced a trespass action initiated through writ of summons followed closely by a set of interrogatories directed to defendant and defendant's objections thereto. The court noted that it was handicapped in understanding and appraising plaintiff's case by the lack of a complaint, and it was

had provided insufficient opportunity for discovery); *Gross v. United Eng'rs & Constructors, Inc.,* 224 Pa.Super. 233, 302 A.2d 370 (1973) (affirming the trial court's dismissal for want of specificity in pleading where it found that plaintiff failed repeatedly to pursue available discovery or amend the complaint). Neither *Lombardo* nor *Gross* are sufficiently on point to warrant further comment.

11. Until 1979, the civil rules required that depositions "substantially aid" in the preparation of the pleadings. Pa.R.C.P. 4007. This rule was rescinded in 1978, effective 1979, and its subject matter was transferred to Pa.R.C.P. 4001(c). The current rule retains the "preparation" language but no longer includes the "substantially aid" qualifying language.

unsure whether plaintiff desired to proceed with a slander action or one for "tortious interference of a business." *Id.* at 248. Nevertheless, the court recognized plaintiff's right to pre-complaint discovery. Relying on *Rosenbaum*, the court held that pre-trial discovery should be broadly permitted and specifically allowed if it substantially aided in the preparation of pleadings; but, conversely, denied if it was in substance a search for a cause of action. Using this test, the court reviewed each interrogatory, allowing some and disallowing others.

In *Pustilnik v. SEPTA*, 45 Pa. D. & C.2d 799 (C.P.Phila.1968), the court began its analysis by citing the same section of Pa.R.C.P. 4007(a) relied upon by the courts in *Rosenbaum* and *Lutsko*, recognizing the propriety of pre-complaint discovery when it "will substantially aid in the preparation of the pleadings." *Pustilnik*, 45 Pa. D. & C.2d at 799. Notwithstanding this premise, the court relied upon a number of common pleas court cases enunciating a different standard than that articulated in *Rosenbaum* and *Lutsko*. Declining to adopt the proposition that pre-complaint discovery should be broadly granted, the court instead ruled that such discovery should be allowed only subject to "carefully constructed limitations." *Pustilnik*, 45 Pa. D. & C.2d at 799. Thus, the *Pustilnik* court held that pre-complaint discovery should be disallowed unless a complaint cannot be drafted without it.

In *Crown Marketing Equipment Co. v. Provident National Bank*, 3 Pa. D. & C.3d 364 (C.P.Phila.1977), defendant sought pre-complaint discovery incident to joining and filing a third-party complaint against an additional defendant. One of Crown's employees had embezzled money from checking accounts in Provident Bank. Crown sued the bank asserting that it was liable for failing to interdict the embezzlement. The bank sought to join its accountants as third-party defendants. The bank filed a writ of summons against the accountants and a request for pre-third-party-complaint discovery. The accountants moved for a protective order. The trial court adopted the *Pustilnik* test prohibiting pre-complaint discovery unless a complaint cannot be drafted without it. Because the

court found that the bank had sufficient facts to file the third-party complaint against its accountants, it denied pre-complaint discovery.

The above cases were decided prior to the 1978 amendments to the discovery rules. Although not permitting the requested discovery on the facts before them, the *Rosenbaum* and *Lutsko* courts held that pre-complaint discovery should be broadly permitted and that the test should focus on whether the discovery is intended to aid substantially in the preparation of the pleadings, or whether the discovery request reflects an open-ended effort to find a cause of action where none is manifest. *Pustilnik* and *Crown Marketing* represented a subtle but material shift in the analysis in narrowing the scope of permissible pre-complaint discovery and permitting it only when a complaint cannot be filed without it.

In 1978 the Rules of Civil Procedure regarding discovery were amended.[12] The most noteworthy change *a propos* of the instant question involved the elimination of the "substantially aid" qualification to pre-complaint discovery. In practice, however, this textual change made no apparent difference to the courts considering requests for pre-complaint discovery.

The first post-amendment case on point was *Wable v. Watkins,* 47 Pa. D. & C.3d 485 (C.P. Somerset 1986). As in *Crown Marketing,* the case involved a defendant seeking to join a third-party defendant. The defendant initiated joinder through a writ of summons and a notice to the proposed additional defendant seeking his deposition. The third-party defendant responded with a motion for protective order. The court first noted that the 1978 amendments to the rules eliminated the requirement that pre-complaint discovery "substantially aid" in the preparation of the pleadings. It then turned to the new Pa.R.C.P. 4007.1(c), which required that a pre-complaint notice of deposition include a brief statement of the nature of the cause of action and the matters to be investigated. The court opined that this new rule ensured the deponent understood the basis of the action and was prepared

12. Effective April 16, 1979.

to be deposed. The court then noted that under the amended rules the matter inquired into needed to be relevant to the case.[13] Thus, the court found that the Rule 4007.1(c) statement must provide sufficient detail to permit a meaningful relevancy analysis.

The court then considered the third-party defendant's contention that defendant sought discovery to find rather than substantiate a cause of action. Acknowledging the amendments to the rules, the court nevertheless found that their intent remained consistent with prior law, and accordingly applied the test enunciated by *Rosenbaum* and *Lutsko* requiring the court to weight the intrusion upon the defendant against the necessity of the discovery to plaintiff's ability to prepare a legally sufficient complaint. Thus, in *Wable,* the common pleas court expressly approved the *Rosenbaum* and *Lutsko* approach as well as the different but not inconsistent approach set forth in *Pustilnik* and *Crown Marketing.* Once again, the court denied pre-complaint discovery.

This trend continued. In *Anderson v. PennDOT,* 47 Pa. D. & C.3d 429 (C.P. Cumberland 1987), plaintiff suffered a motorcycle accident and filed a writ of summons and a request for pre-complaint discovery. All defendants save one objected to the pre-complaint discovery. The trial court noted, with an excess of caution, that "[t]here is some authority to support the allowance of pre-complaint discovery in certain limited and controlled situations." *Id.* at 431 (citing GOODRICH-AMRAM 2d § 4001(c):3). As in *Wable,* the court turned to *Pustilnik* and *Crown Marketing* for the proposition that pre-complaint discovery should be carefully constrained and permitted only when a complaint cannot be drafted without it. The court held that plaintiff could draft a complaint with the facts in his possession, and disallowed pre-complaint discovery.

In 1998, in *Potts v. Consolidated Rail Corp.,* 37 Pa. D. & C.4th 196 (C.P. Allegheny 1998), the trial court, by the Honorable R. Stanton Wettick, Jr., addressed the scope of pre-complaint discovery in a case involving allegations of breach of

---

13. In point of fact, relevancy was required prior to the 1978 amendments. *See Hall v. Baltic,* 12 Pa. D. & C.3d 647 (C.P. Beaver 1978).

contract, fraud, and deceit. Plaintiff commenced his action by writ of summons and submitted separate interrogatories to each defendant. Defendants responded with motions for protective orders asserting that the pre-complaint discovery requests sought information beyond that needed to prepare a complaint. The court opined persuasively that the interests of justice are best served by a policy that limits the scope of pre-complaint discovery. In support, it noted that defendants ideally should have the opportunity to test a complaint before submitting to discovery. Thus, when possible, discovery requests should follow pleadings to facilitate the narrowing of issues and concomitant narrowing of discovery. The court echoed *Wable* that discovery is limited to relevant matters and noted that, absent a complaint, neither a defendant nor a court is in a position to assess relevancy. Accordingly, the court adopted the *Pustilnik* and *Crown Marketing* test permitting narrow pre-complaint discovery only when necessary to the drafting of a legally sufficient complaint, and denied plaintiff's pre-complaint discovery request.

Finally, we turn to *Evans Estate*, 15 Pa. D. & C.2d 619 (C.P. Luzerne 1958). Notwithstanding its age, we examine this case last because the Superior Court in the case at bar relied upon it in denying Henry Jr.'s pre-complaint discovery request under a test even more demanding than those discussed above. In *Evans Estate*, disappointed heirs challenged the probate of a will, contending that its proponents had subjected the decedent to undue influence and duress.[14] The heirs sought pre-complaint discovery, arguing that it was required before they could prepare their pleadings. Interestingly, they went further and argued that, within the confines of this will contest litigation, they were entitled to go on a "fishing expedition." *Id.* at 626. The court rejected these assertions, and instead held that, once a will is probated, one challenging it must allege particular grounds and buttress such grounds with specific facts. *Id.* The court then said that it was

---

14. While the process in the challenge to an estate differs in some respects, including nomenclature, from other civil actions, the discovery issues nevertheless are controlled by the same civil rules.

"elementary" that the proponents of the discovery must have a *"prima facie* case" as a condition precedent to seeking additional information through discovery. *Id.* at 626–27 (citing *Rosenbaum, supra; Matusow Mfg. Co. v. Weinraub,* 86 Pa. D. & C. 557 (C.P.Phila.1953)).[15] On this basis, the court in *Evans Estate* denied the request for pre-complaint discovery.[16]

We agree with Henry Jr. that the Superior Court's requirement that a pleader must establish a *prima facie* case prior to obtaining pre-complaint discovery is too strict. Interestingly, as commonplace and oft-used as is the term *"prima facie* case," it is not well defined under Pennsylvania law. In the criminal context, the Commonwealth establishes a *prima facie* case when "it produces evidence that if accepted as true, would warrant the trial judge to allow the case to go to the jury." *Commonwealth v. Martin,* 727 A.2d 1136, 1142 (Pa.Super.1999), *overruled on other grounds, Commonwealth v. Mouzon,* 571 Pa. 419, 812 A.2d 617 (2002). Black's Law Dictionary defines a *prima facie* case as occurring when one party produces "enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor." BLACK'S LAW DICTIONARY 1209 (7th ed.1999). Similarly, in the context of employment law, a *prima facie* case is established by

15. The citation to *Matusow* was misdirected. In *Matusow,* plaintiff instituted an action in equity by writ of summons, and sought discretionary discovery under the equity rules. In the only case we have cited in which discovery was granted, the court held that plaintiff was not on a fishing expedition because it had already established what amounted to a *prima facie* case for unjust enrichment and for the declaration of a constructive trust. *Id.* at 558–59. Thus, the court found that plaintiff's need and justification for discovery far outweighed defendant's arguments for forestalling it. *Id.* at 560. *Matusow* neither held nor suggested that a *prima facie* case must be established before taking pre-complaint discovery. Indeed, *Evans Estate* and the case *sub judice* are the only cases our research has revealed that would establish that criterion.

16. We recognize that both *Evans Estate* and the case under consideration involve will contests, and therefore have in common a decedent's unavailability to illuminate his or her intentions. Nevertheless, we decline to establish different criteria for application of the civil rules pertinent to pre-complaint discovery dependent on the species of case. We believe it wiser to establish a uniform rule, and to permit trial courts to exercise their discretion to apply that rule in deciding individual cases.

substantial evidence requiring the opposing party's affirmative rebuttal. *See Williamsburg Cmty. Sch. Dist. v. Pennsylvania Human Relations Comm'n,* 99 Pa.Cmwlth. 206, 512 A.2d 1339, 1341 (1986).[17]

■ The definition of a *prima facie* case is pertinent to a civil action when a court considers a preliminary objection in the nature of a demurrer pursuant to Pa.R.C.P. 1028(a)(4). In evaluating a demurrer, a court must accept as true all well-pleaded facts and all reasonable inferences deducible therefrom, and determine with certainty that no recovery is possible. *Commonwealth v. Percudani,* 825 A.2d 743, 745 (Pa. Cmwlth.2003); *Werner v. Plater–Zyberk,* 799 A.2d 776, 782–83 (Pa.Super.), *appeal denied,* 569 Pa. 722, 806 A.2d 862 (2002). This standard of review sometimes is couched in terms of a *prima facie* case. For example, in *Weber v. Bell Telephone Co.,* 415 Pa. 292, 203 A.2d 554, 556 (1964), we held that where the complaint does not facially disclose a *prima facie* case, the trial court does not err in sustaining a demurrer.

■ It is therefore self-evident that if a *prima facie* case is stated, a demurrer necessarily will fail; conversely, by definition, where a *prima facie* case obtains, a court cannot conclude with certainty that no recovery is possible. To require demonstration of a *prima facie* case prior to allowing pre-complaint discovery is tantamount to writing pre-complaint discovery out of the civil rules entirely, inasmuch as the courts of our Commonwealth largely have agreed, in so many words, that pre-complaint discovery is permissible only where a complaint sufficient to withstand a demurrer cannot otherwise be made out. Thus, to hold that a *prima facie* case must be shown before allowing pre-complaint discovery leads to an absurd and unreasonable result that violates our guiding principles of rule construction. *See* Pa.R.C.P. 128(a) (instructing that in interpreting the civil rules, courts should presume that "the Supreme Court does not intend a result that is

17. For a thorough discussion of the *prima facie* standard and substantial evidence, see the opinion by the Honorable Mark Bernstein in *Crepeau v. Rite Aid, Inc.,* 2005 WL 1041395 (C.P. Phila. May 3, 2005).

absurd, impossible of execution or unreasonable"); *Common-wealth v. Burnsworth,* 543 Pa. 18, 669 A.2d 883 (1995).

## IV.

Having rejected as untenable the Superior Court's attempt to clarify the standard Pennsylvania courts must employ in evaluating a request for pre-complaint discovery, it remains for us to fashion an appropriate standard. As noted at some length, *supra,* Pennsylvania trial courts have relied on a number of criteria over the years to evaluate such requests. The emergent consensus in the trial courts of this Common-wealth holds that pre-complaint discovery should be restric-tively allowed, narrowly drafted, and permitted only when a complaint capable of surviving preliminary objections cannot be filed without aid of the requested discovery. While we do not necessarily quarrel with this synthesis of Pennsylvania law, we note that it vests nearly unbridled discretion in the trial courts, has caused them much consternation, and has resulted in the disallowance of almost all requests for pre-complaint discovery.

Although we specifically reject the Superior Court's holding in this case attempting substantially to curtail pre-complaint discovery, we also recognize the dangers of unconfined pre-complaint discovery. Indeed, the risks of implementing dis-covery standards that are too permissive are effectively articu-lated in the above caselaw and enumerated in the rules governing discovery, which grant courts wide discretion to deny discovery where it is sought in bad faith; would cause the party against which it is sought unreasonable annoyance, embarrassment, oppression, burden, or expense; or would entail unreasonable investigation. Pa.R.C.P. 4011, 4012.

This concern for dilatory, vexatious, or otherwise abusive litigation conduct is reflected elsewhere in Pennsylvania law. Specifically, our "Dragonetti Act," 42 Pa.C.S. §§ 8351–55, provides a statutory basis for relief for wrongful use of civil proceedings.[18] Under the Act, "[w]rongful use of civil pro-

18.  § 8351.  **Wrongful use of civil proceedings**

ceedings is a tort which arises when a party institutes a lawsuit with a malicious motive and lacking probable cause." *Ludmer v. Nernberg,* 433 Pa.Super. 316, 640 A.2d 939, 942 (1994), *appeal denied,* 541 Pa. 652, 664 A.2d 542 (1995), *cert. denied sub nom Nernberg v. Ludmer,* 517 U.S. 1220, 116 S.Ct. 1849, 134 L.Ed.2d 950 (1996) (internal quotation marks omitted). "[T]he gravamen of this tort is the perversion of legal process to benefit someone in achieving a purpose which is not an authorized goal of the procedure in question." *Werner,* 799 A.2d at 785. In establishing entitlement to relief, a plaintiff under the Dragonetti Act bears the burden of proving:

(1)The defendant has procured, initiated or continued the civil proceedings against him.

(2) The proceedings were terminated in his favor.

(3) The defendant did not have probable cause for his action.

(4) The primary purpose for which the proceedings were brought was not that of securing the proper discovery, joinder of parties or adjudication of the claim on which the proceedings were based.

(5) The plaintiff has suffered damages....

42 Pa.C.S. § 8354; *cf. McGee v. Feege,* 517 Pa. 247, 535 A.2d 1020 (1987) ("We will not countenance the use of the legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process...."); *Werner,* 799 A.2d at 785 ("To establish a claim for [commonlaw] abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed[,] and (3)

(a) **Elements of action.**—A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings [where]:

(1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based;  and

(2) The proceedings have terminated in favor of the person against whom they are brought.

42 Pa.C.S. § 8351.

harm has been caused to the plaintiff."). Thus, whether civil proceedings have been tortiously used hinges on an aggrieved party's ability to demonstrate that the suitor instituted proceedings without probable cause to do so. 42 Pa.C.S. 8354.

The Dragonetti Act provides a useful window through which to view the discovery question before us, because the injuries it aims to remedy and deter materially resemble those enumerated in rules 4011 and 4012. *Compare* 42 Pa.C.S. 8354(4) (identifying civil proceedings as wrongly used where "[t]he primary purpose for which the proceedings were brought was not that of securing the proper discovery, joinder of parties or adjudication of the claim on which the proceedings were based") *with* Pa.R.C.P. 4011 (permitting no discovery or deposition sought in bad faith or that would unreasonably annoy, embarrass, oppress, burden, or expense any person). The manifest goal served in both contexts is the prevention of bad faith, or otherwise negligent, reckless, or malicious conduct in bringing suit or requesting pre-complaint discovery. In each, at issue is the propriety of a plaintiff's imposition of his will on a defendant, and the consequent subjection of a party to all the process at a court's disposal.

Accordingly, we look to the Dragonetti Act's requirement that an absence of probable cause to support the underlying suit be shown before an action for wrongful use of civil proceedings is allowed to guide us in adding to the standard previously articulated by our trial courts in deciding whether to allow pre-complaint discovery. We believe the addition of the requirement that plaintiff show probable cause to believe that pre-complaint discovery is necessary to the formation of a legally sufficient complaint is consistent with prior Pennsylvania caselaw and the applicable procedural rules. Moreover, the term "probable cause" is sufficiently well defined and understood in Pennsylvania law to ensure an objective, unified standard, which at once permits a plaintiff who can meet it the opportunity to use pre-complaint discovery to garner sufficient supplemental information to allow the filing of a sustainable complaint, and, conversely, protects defendants from bad faith,

negligent, reckless, or malicious conduct resulting in an unjustifiable intrusion into defendant's affairs.

This does not, however, end our inquiry. First, to articulate our reasoning fully, we must define probable cause *vis-vis* precomplaint discovery; what a court might reasonably expect a plaintiff to produce to demonstrate probable cause prior to the filing of a complaint differs substantially from the standard it might apply to a litigant who has successfully shepherded a lawsuit through a full trial. These differences are manifest in the two doctrines harmonized above. The Dragonetti Act, in its requirement that the proceedings from which the allegedly tortious conduct arose have been terminated in favor of the Dragonetti plaintiff, requires a hindsight evaluation of a litigant's reasons for suing in the first instance. This inquiry, necessarily, will be colored by the information revealed during the course of trial. Conversely, any assessment of the propriety of a pre-complaint discovery request can be considered only in light of a plaintiff's offers of proof without benefit of more. Accordingly, even inasmuch as these two inquiries sound in substantially similar terminology, the import of those usages will vary to accommodate their divergent contexts.

Given our substantial reliance on the Dragonetti Act, we find it illuminating to consider the Act's definition of probable cause.

A person who takes part in the procurement, initiation or continuation of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which his claim is based, and either:

(1) Reasonably believes that under those facts the claim may be valid under the existing or developing law;

(2) Believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information; or

(3) Believes as an attorney of record, in good faith that his procurement, initiation or continuation of a civil cause is

not intended to merely harass or maliciously injure the opposite party.

42 Pa.C.S. § 8352.

Under the Commonwealth's fact-pleading regime, any complaint must state facts in which the complainant reasonably believes, and under which a good faith argument may reasonably be made that Pennsylvania law provides, or under developing law may provide, relief. Similarly, it must be the case that, in seeking pre-complaint discovery, the moving party can set forth probable cause that, based on facts known to him, the evidence sought prior to the filing of a complaint will support a cognizable cause of action pursuant to existing or developing Pennsylvania law.

We find substantial support for this analysis, and a great deal of refinement, in a comparable combination of Connecticut doctrines. In lieu of the Pennsylvania practice of permitting pre-complaint discovery, Connecticut authorizes an independent action in equity for discovery designed to obtain evidence for use in a subsequent action. *Berger v. Cuomo*, 230 Conn. 1, 644 A.2d 333, 337 (1994) (citing *Peyton v. Werhane*, 126 Conn. 382, 11 A.2d 800 (1940)). In *Berger*, plaintiff initiated a discovery action by filing a "bill of discovery," [19] and defendant challenged the propriety of the discovery request. The Connecticut Supreme Court set forth its criteria for weighing requests for pre-complaint discovery as follows:

Discovery is confined to facts material to the plaintiff's cause of action and does not afford an open invitation to delve into the defendant's affairs. *Carten v. Carten*, 153 Conn. 603, 613, 219 A.2d 711 (1966); *Pottetti v. Clifford*, [146

**19.** The Connecticut courts define a bill of discovery as "an independent action in equity for discovery ... designed to obtain evidence for use in an action other than the one in which discovery is sought." *Berger*, 644 A.2d at 337 (quoting *Peyton*, 11 A.2d 800). Although immaterial to our partial reliance on Connecticut's jurisprudence in this challenging area of law, we note that this Court has declined to authorize comparable equitable actions in Pennsylvania courts. *See Cole v. Wells*, 406 Pa. 81, 177 A.2d 77, 80 (1962) (rejecting a stand-alone discovery action in equity); *id.* at 82 ("[D]iscovery must not be allowed unless it is sought as a proceeding ancillary to a pending action and in the appropriate form.").

Conn. 252, 259, 150 A.2d 207 (Conn.1959) ]. A plaintiff must be able to demonstrate good faith as well as probable cause that the information sought is both material and necessary to his action. *Pottetti v. Clifford, supra,* at 259, 150 A.2d 207. A plaintiff "should describe with such details as may be reasonably available the material he seeks ... and should not be allowed to indulge a hope that a thorough ransacking of any information and material which the defendant may possess would turn up evidence helpful to [his] case." *Id.* at 263, 150 A.2d 207. What is reasonably necessary and what the terms of the judgment require call for the exercise of the trial court's discretion. *Sinclair Refining Co. v. Jenkins Petroleum Process Co.,* 289 U.S. 689, 696–97, 53 S.Ct. 736, 738, 77 L.Ed. 1449 (1933).

*Id.* at 337. The Connecticut test neither authorizes the proverbial fishing expedition nor otherwise fails for want of rigor. Indeed, it explicitly denies a litigant the "hope" that a case may be found by "thorough[ly] ransacking" materials in an opposing party's possession. Rather, the probable cause requirement imposes an objective "reasonable person" standard. "Probable cause is the knowledge of facts sufficient to justify a reasonable man in the belief that he has reasonable grounds for presenting an action...." *Paranto v. Ball,* 132 Conn. 568, 46 A.2d 6, 7 (1946).

We also note that Connecticut relies on its own "vexatious suit" statute for its definition of probable cause in the context of pre-complaint discovery. *See Berger,* 644 A.2d at 337 (relying on *Cosgrove Dev. Co. v. Cafferty,* 179 Conn. 670, 427 A.2d 841 (1980), a case defining probable cause in the context of an action charging vexatious litigation). Connecticut's answer to our Dragonetti Act provides:

Any person who commences and prosecutes any civil action or complaint against another, in his own name or the name of others, or asserts a defense to any civil action or complaint commenced and prosecuted by another (1) without probable cause, shall pay such other person double damages, or (2) without probable cause, and with a malicious

intent unjustly to vex and trouble such other person, shall pay him treble damages.

Conn. Gen.Stat. § 52–568.[20]  These parallels are unsurprising, and this similarity of doctrinal approach merely persuades us further of the propriety of applying a probable cause standard to the determination whether a party should be entitled to pre-complaint discovery.

That said, we do not ratify the Connecticut standard wholesale, because it appears more permissive than we believe to be necessary.  *See Pottetti,* 150 A.2d at 210 ("A pure bill of discovery is favored in equity and will be granted unless there is some well-founded objection against the exercise of the court's jurisdiction.").[21]  We do not find, in Connecticut's law, an unequivocal requirement that such discovery will be granted only where a litigant has averred that absent such discovery his suit will not be able to proceed.  Indeed, its decision in *Pottetti,* which affords relief not only when discovery is material and necessary to the suit, but also when discovery "is needed to aid in the proof," *id.* at 211, and which furthermore hints at a presumption in favor of such discovery, *id.* at 210 (granting such discovery "unless there is some well-founded objection"), suggests an orientation significantly more favorable toward pre-complaint discovery than we believe advisable.

In concluding our discussion, we note that the basic contours of the Dragonetti Act's and Connecticut's probable cause standard for the evaluation of the propriety of a given pre-complaint discovery request do not violate the constraints on discovery contained in Civil Rules 4011 and 4012.  Rule 4011

**20.** Although absent from its text, this statute has been construed to require termination of the underlying suit in favor of the party complaining of vexatious litigation. *See Vandersluis v. Weil,* 176 Conn. 353, 407 A.2d 982 985 (1978); *cf.* 42 Pa.C.S. §§ 8351(a)(2), 8354(2).

**21.** The "pure bill of discovery," according to the Connecticut Supreme Court, requires an affirmative showing "that the matter he seeks to discover is material and necessary to the proof of, or is needed to aid in the proof of, another action, already brought or about to be brought, and that he has no other adequate means of enforcing discovery of the matter." *Pottetti,* 150 A.2d at 211. The "already brought or about to be brought" language suggests that the pure bill of discovery is closely apposite to our pre-complaint discovery.

speaks in terms of bad faith, and both rules rely heavily on principles of reasonableness. Implementation of an objective, probable cause standard would aid rather than hinder courts' determinations of good faith. With regard to assessing the reasonableness of various discovery requests and the concomitant burdens such requests would impose on their subjects, a probable cause standard, again, enhances rather than interferes with the inquiry. While the two principles may not be coextensive—that is, a party may have probable cause to request information that a court nevertheless deems unreasonable to order another party to provide—they are not inconsistent.

The Superior Court erected an insurmountable barrier to the tried and true practice of pre-complaint discovery in aid of pleading provided in Civil Rule 4001(c). We reject its holding, which requires the establishment of a *prima facie* case prior to the approval of a pre-complaint discovery request, because it is so strict as effectively to eliminate pre-complaint discovery altogether.[22] We agree, however, that pre-complaint discovery is a means to the specific end of gathering sufficient information for the filing of a complaint, and is appropriate only when there is probable cause to believe it will achieve that end.[23]

Accordingly, to obtain pre-complaint discovery a litigant should be required to demonstrate his good faith as well as probable cause that the information sought is both material and necessary to the filing of a complaint in a pending action.[24]

22. As mentioned above, we recognize that the Superior Court was dealing with an "estate case" and may well have intended to treat such cases differently than the prototypical civil action. We find a uniform rule for pre-complaint discovery to be more prudent.

23. As our sister court aptly noted, "At times, cases will not be proved, or will be proved clumsily or wastefully, if the litigant is not permitted to gather his evidence in advance." *Pottetti*, 150 A.2d at 211.

24. Given this Court's rejection of separate equitable actions for discovery, *see Cole*, 177 A.2d at 80, such a request will be appropriate only upon the filing of a Writ of Summons, at which time an action in service of which discovery is requested may properly be described as "pending," or, as here, when a court disallows a complaint but permits discovery to facilitate an amended complaint.

A plaintiff should describe with reasonable detail the materials sought, and state with particularity probable cause for believing the information will materially advance his pleading, as well as averring that, but for the discovery request, he will be unable to formulate a legally sufficient pleading. Under no circumstance should a plaintiff be allowed to embark upon a "fishing expedition," or otherwise rely on an amorphous discovery process to detect a cause of action he lacks probable cause to anticipate prior to the pre-complaint discovery process under this standard. The reasonableness of a given request, as well as the existence of probable cause and the good faith of the party seeking discovery, are matters for the trial court to determine in the exercise of its sound discretion.

In practice, of course, a trial court addresses a discovery request not in abstract terms but in the context of the case at bar. In doing so, the court exercises significant discretion, weighing the importance of the request against the burdens imposed on the subject party to determine, as a practical matter, whether the discovery request should be permitted. Because the trial court is the body best situated to assess the legitimacy, necessity, and burden of a given discovery request, we are loath to disturb unduly the ingrained customs and practices of our trial courts of permitting the making of averments on "information and belief," [25] attempting to fashion a just result that best balances the needs of the adversary

**25.** *See* Pa.R.C.P. 1023.1(c), which provides:

(c) The signature of an attorney or pro se party constitutes a certificate that the signatory has read the pleading, motion, or other paper. By signing, filing, submitting, or later advocating such a document, the attorney or pro se party certifies that, to the best of that person's knowledge, information and belief, formed under an inquiry reasonable under the circumstances

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation,

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law,

(3) the factual allegations have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery....

parties, and making discovery rulings that comport with these basic principles. Thus, nothing in this Opinion should be construed to diminish materially a trial court's time-honored prerogative to evaluate pleadings and discovery requests and to fashion discovery orders in light of what it deems appropriate in a given case. Rather, this Opinion simply aims to guide trial courts in exercising their undisputed discretion to grant or deny pre-complaint discovery requests according to the exigencies of a given case.

## V.

▮▮ The record before us reveals insufficient information to assess the propriety of Henry Jr.'s pre-complaint discovery request in light of the foregoing concerns. Accordingly, pursuant to parts I., II., III., and V. of this Opinion, as to which a majority of this Court agrees, the order of the Superior Court is reversed and the case remanded for further proceedings. Pursuant to the narrowest reasoning uniting a majority of the justices participating in this case,[26] and the opinion of Mr. Justice Saylor, *see* Concurring Op., *infra*, at 446, 894 A.2d at 1280, given the facts of this case the trial court is directed to assess whether Henry Jr. can establish probable cause that his requested discovery will permit the filing of a complaint capable of surviving a demurrer in the instant litigation and to rule accordingly.[27]

Justice CASTILLE joins the opinion.

**26.** *Cf. Marks v. United States*, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (opinion of Stewart, Powell, and Stevens, JJ.)) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of [a majority], 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds[.]' ").

**27.** We also shall refer this matter to our Civil Procedural Rules Committee to consider the adequacy of Rules 4001(c) and 4007(c) *vis-à-vis* pre-complaint and pre-amended complaint discovery, and to recommend any amendments that might clarify this vexing area of civil procedure. *See Payne v. Commonwealth, Dep't of Corrs.*, 582 Pa. 375, 871 A.2d 795, 805 n. 7 (2005).

Justice NEWMAN did not participate in the consideration or decision of this case.

Former Justice NIGRO did not participate in the decision of this case.

Justice SAYLOR files a concurring opinion.

Chief Justice CAPPY files a dissenting opinion in which Justice EAKIN joins.

## *CONCURRING OPINION*

Justice SAYLOR.

I join Parts I, II, III, and V of the majority opinion. Left to my own devices, however, I would direct that the trial court allow Appellant the opportunity to conduct meaningful discovery.

As to Part IV, in the first instance, I view the majority's efforts to establish principles to guide the trial courts' discretion relative to the availability of pre-complaint discovery in matters of general application as salutary.[1] However, I regard the facts and circumstances presented in this case as highly unusual and, as such, not readily amenable to a rule of general application. In particular, I agree with Appellant's argument that the trial court imposed a heightened burden upon him in connection with the pleadings, and, after having done so, abused its discretion by failing to afford him discovery to aid him in meeting such additional burden. My reasoning follows.

As indicated by the majority, the elements of the tort of intentional interference with testamentary expectancy are:

(1) The testator indicated an intent to change her will to provide a described benefit for plaintiff;

---

1. It should be noted, however, that *amicus curiae*, the Pennsylvania Trial Lawyers Association, presents a thoughtful position that, if the Court is to consider the possibility of narrowing the availability of pre-complaint discovery relative to that which is presently available under the existing Rules of Civil Procedure, this would be most appropriately addressed via the Court's rulemaking prerogative and procedures and on a prospective basis.

(2) The defendant used "fraud, misrepresentation or undue influence" to prevent execution of the intended will;

(3) The defendant was successful in preventing the execution of a new will; and

(4) But for the defendant's conduct, the testator would have changed his will.

Majority Opinion, at 419–20 n. 3, 894 A.2d at 1263–64 n. 3 (citing *Cardenas v. Schober*, 783 A.2d 317, 326 (Pa.Super.2001)). In the present case, in his original, verified complaint, Appellant averred, *inter alia*, that:

Mrs. McNeil decided to treat [Appellant] equally with his siblings in her Will and took steps to do so, but was thwarted by [Appellee's] scheme [to interfere with Mrs. McNeil's testamentary intent].

* * *

[Wife–Appellee], motivated by her personal animus against [Appellant] and his children as well as by her desire to maximize the economic benefit for herself and her family, embarked on a scheme, together with [Husband–Appellee] to exert undue influence on her mother and other family members in order to increase her own control over family wealth. It was a central part of [Appellees'] scheme to prevent Mrs. McNeil from providing [Appellant] and his family with an equal share of the family wealth, despite Mrs. McNeil's desire to do so.

* * *

[Appellees] also embarked on a plan to control Mrs. McNeil and to interfere with the relationship between Mrs. McNeil and her son, [Appellant], including limiting his access to his mother and manipulating every aspect of Mrs. McNeil's daily affairs.

* * *

[Appellees] took advantage of Mrs. McNeil's vulnerability and frail heath to keep her in a position of physical and

psychological dependency so that they could exert maximum control over the family's finances and could influence key decisions that would affect [Appellant] and his family.

\* \* \*

[Appellees] were concerned that, despite their efforts, Mrs. McNeil might successfully implement her intention to treat [Appellant] and his family equally with her other children and their families, so [Appellees] documented Mrs. McNeil's declining mental condition and failed to take steps to halt or slow its progress in order to be able to challenge any subsequent action favorable to [Appellant] and his family which she was able to take.

\* \* \*

In view of her reconciliation with [Appellant] and their continuing positive relationship, Mrs. McNeil intended to treat him and his family equally to her other children and their families in her Will, and took steps to do so.

Solely to benefit herself and her family and to continue to punish [Appellant], [Appellees] intentionally interfered with Mrs. McNeil's intention to treat [Appellant] and his family equally in her estate plan documents.

\* \* \*

... Mrs. McNeil was prevented from executing a Will treating [Appellant] and his family equally by virtue of [Appellees'] undue influence and control over Mrs. McNeil, which extended to matters relating to her estate planning.

\* \* \*

Without ever saying so explicitly, or even hinting that this was Mrs. McNeil's intent, the December 21, 1989 Will excludes [Appellant] and his family from the vast bulk of the wealth controlled by the Will, estimated to exceed $650 million.

* * *

Mrs. McNeil's strong and positive relationship with [Appellant] continued up to the time of her death in 1998. When she was able to effectuate her own views in family matters, she demonstrated her affection for [Appellant] and her desire to have him and his family treated equally in family matters.

Complaint ¶¶ 22, 23, 25, 41, 53–54, 56, 63, 70, R.R. 16a–25a. Following the fairly detailed factual recitation from which the above is excerpted, each element of the intentional-interference claim is affirmatively asserted in the complaint, among its various counts. *See id.* ¶¶ 73–98, R.R. at 25a–29a.

The above, in my view, adequately sets forth a cause of action for intentional interference with testamentary intent. The trial court, however, required Appellant to detail the affirmative evidentiary support for one of the elemental factual allegations (namely, that Mrs. McNeil intended to equalize Appellant's inheritance), at the pleadings stage. *See McNeil v. Jordan,* No. 99–04287 (C.P. Montgomery Jul. 11, 2000) ("Plaintiff has given this Court and Defendant no way to know that the Complaint is based on anything more than Plaintiff's speculation.").[2] In this respect, I believe that the trial court hybridized the standard governing resolution of a demurrer, which tests the legal sufficiency of a plaintiff's averments to state a cause of action assuming their truth, *see MacElree v. Philadelphia Newspapers, Inc.,* 544 Pa. 117, 124, 674 A.2d 1050, 1056 (1996), with a summary judgment standard. Critically, however, in actual summary judgment proceedings predicated on a party's ability to prove essential elements of a claim or defense, discovery is generally available to such party. *See* Pa.R.C.P. No. 1035.2(2) (providing for an award of

2. Appellant notes that, not only did he plead that Mrs. McNeil intended to allocate to him an equal share of the assets under her control, he also averred that she believed that she actually had done so. *See* Complaint ¶ 88, R.R. at 27a. Appellant also observes that all averments were made upon information and belief as required by the applicable Rules of Civil Procedure, which also indicate that "[t]he signer need not aver the source of the information or expectation of ability to prove the averment or denial at trial." Pa.R.C.P. No. 1024(a).

summary judgment "if, *after the completion of discovery relevant to the motion,* ... an adverse party who will bear the burden of proof has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury" (emphasis added)).[3]

While the propriety of the trial court's order dismissing the original complaint is not directly before the Court at this juncture, Appellant persuasively argues that the order and its rationale serve as a factual circumstance that is relevant to appellate review of the trial court's discretionary decision concerning the availability of discovery directed to the preparation of an amended complaint. In light of the trial court's order, which had the effect of precluding Appellant from proceeding to discovery in the ordinary course on the complaint that he filed, I believe that it was an abuse of discretion to deny him access to such discovery to attempt to supplement his factual allegations to meet the court's heightened requirements, again, in the unusual circumstances presented.[4]

In terms of the result in this case, I agree with the majority that the Court's mandate must entail a remand for further proceedings, since such result is supported by three of the five eligible Justices. Further, I support the application by the common pleas court of the probable cause standard on remand in this particular case, as I also agree with the majority that this approach embodies the narrower of the grounds offered to

**3.** The trial court's concern regarding the legitimacy and/or viability of Appellant's claims is not unfounded, particularly as this type of claim is readily subject to abuse in light of the unavailability of the testator to resolve questions concerning his or her intent. Nevertheless, the cause of action for intentional interference with testamentary intent has evolved in Pennsylvania to redress wrongful conduct where it is present, and this Court has put regular procedures into place to test factual averments and curb abuses, including the availability of summary judgment and sanctions where appropriate.

**4.** Certainly, Appellant could have chosen to appeal the trial court's initial order dismissing the complaint. However, I do not believe that he should be penalized for attempting to comply with the trial court's additional requirements, particularly as the complaint was dismissed without prejudice, and it was (and is) Appellant's position that additional information could be obtained via discovery.

support the remand. *See* Majority Opinion, at 445 & n. 26, 894 A.2d at 1279 & n. 26.

## DISSENTING OPINION

Chief Justice CAPPY.

In essence, the Majority Opinion holds that under Pa.R.C.P. No. 4007(c) and Pa.R.C.P. No. 4007.1(c), a plaintiff who believes that he has a cause of action to assert is entitled to subject a defendant or a non-party to the tools of discovery, as long as he has probable cause to believe that he will obtain information that will reveal to him that the essential elements of his claim exist. I do not agree with this holding. I would conclude that the Rules allow pre-complaint discovery only to a plaintiff who knows he has reason to sue, but needs additional information in order to plead his claim. Moreover, I do not agree with the Majority's approach for determining the meaning of this Court's procedural rules or with the Majority's importation of a statutory standard in construing them. Therefore, I respectfully dissent.

The resolution of the issue presented in this appeal requires that certain of the Pennsylvania Rules of Civil Procedure be construed. This Court has articulated the principles by which we are to construe the Rules. Pa.R.C.P. No. 127(a) provides that "[t]he object of all interpretation and construction of the rules is to ascertain and effectuate the intention of the Supreme Court." Pa.R.C.P. No. 127(a). To meet this objective, Rule 127 offers more specific guidance; it first points to the words that are used in a Rule, and then to other considerations, if the words are not explicit. Rule 127 states

Construction of the Rules. Intent of the Supreme Court Controls

. . .

(b) Every rule shall be construed, if possible, to give effect to all its provisions. When the words of a rule are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

(c) When the words of a rule are not explicit, the intention of the Supreme Court may be ascertained by considering, among other matters (1) the occasion and necessity for the rule;  (2) the circumstances under which it was promulgated;  (3) the mischief to be remedied;  (4) the object to be attained;  (5) the prior practice, if any, including other rules and Acts of Assembly upon the same or similar subjects;  (6) the consequences of a particular interpretation;  (7) the contemporaneous history of the rule;  and (8) the practice followed under the rule.

Pa.R.C.P. No. 127.

In light of these principles, it is evident that under Pa. R.C.P. No. 4001(c) and Pa.R.C.P. No. 4007.1(c), this Court intends for a plaintiff to use the mechanics of discovery, even before his complaint is filed.  In this regard, the words in the Rules are clear, stating respectively, that "any party may take the testimony of any person, including a party, by deposition upon oral examination or written interrogatories *for ... preparation of pleadings ...*," and that a plaintiff who has filed a writ of summons and who "desires to take the deposition of any person ... *for the purpose of preparing a complaint*" shall provide a written notice as to the nature of his cause of action and the areas into which he will inquire.  Pa.R.C.P. No. 4001(c), Pa.R.C.P. No. 4007.1(c) respectively, (emphasis added).

What is not clear in Pa.R.C.P. No. 4001(c) and Pa.R.C.P. No. 4007.1(c), however, is this Court's intent as to the scope of such use.  More specifically, the words of the Rules are not explicit as to whether a plaintiff may engage in discovery in order to uncover the material facts that reflect the essential elements of his cause of action, and which must be alleged in a well-pleaded complaint. *See* Pa.R.C.P. No. 1019(a).  On this point, therefore, this Court's intent is to be ascertained through Pa.R.C.P. No. 127(c)'s other considerations.

I believe that two of these considerations are dispositive. The first consideration is the consequences that will flow from the majority's interpretation of the Rules. *See* Pa.R.C.P. No.

127(c)(6). In the majority's view, an interpretation of Pa. R.C.P. No. 4001(c) and Pa.R.C.P. No. 4007.1(c) that will expose litigants and non-parties to the burden and expense that discovery inevitably imposes so as to enable a plaintiff to determine whether or not he has a claim to pursue is acceptable. In my view, it is not. Moreover, I prefer the effects that would result from the narrow interpretation of Pa.R.C.P. No. 4001(c) and Pa.R.C.P. No. 4007.1(c) that the trial court articulated in *Potts v. Consolidated Rail Corporation*, 37 Pa.D. & C.4th 196 (Allegheny County 1998). I conclude that an interpretation of the Rules that encourages the filing of complaints and motions for a more specific pleading or answers, as opposed to requests for pre-complaint discovery, would best serve to resolve the disputes that frequently arise in this area efficiently and justly. *See* 37 Pa.D. & C. 4th at 199–201.

The second consideration is the practice that has been followed under the Rules. Pa.R.C.P. No. 127(c)(8). Many trial courts have not allowed pre-complaint discovery to a plaintiff who desires to determine whether he has reason to sue, but have allowed it to a plaintiff who has shown that he has a cause of action, but needs additional information in order to plead his claim. *See, e.g., French v. ITT Industries*, 66 Pa.D. & C.4th 196 (Lawrence County 2004) (ordering pre-complaint discovery for a plaintiff who alleged that an equipment failure was a contributing factor in the industrial accident that resulted in plaintiff's decedent's death as to the specifics of the accident and the servicing and chain of distribution of the specific equipment and its components); *Wable v. Watkins*, 47 Pa.D. & C.3d 485 (Somerset County 1986) (denying pre-complaint discovery to a defendant who sought to ascertain whether the additional defendant had breached any duty to plaintiff that may have caused or contributed to plaintiff's fall and ensuing injuries); *Lutsko v. Sawka*, 27 Pa.D. & C.2d 246 (Lehigh County 1962) (denying pre-complaint discovery to a plaintiff who sought it in order to make up her mind as to whether she might have a claim for tortious interference of business); *Purcell v. Westinghouse Broadcast-*

*ing Co.*, 10 Pa.D. & C.2d 729 (Philadelphia County 1957) (ordering pre-complaint discovery for a plaintiff suing in libel and slander in order to secure the language used in the broadcast).[1] I am of the opinion that the approach taken by these trial courts leads to consistent, predictable results and properly balances the competing concerns that are presented by the litigants and non-parties in such cases.

Therefore, I would conclude that this Court intends that the trial courts have the discretion under Pa.R.C.P. No. 4001(c) to make discovery available to a plaintiff who has a cause of action to assert; who demonstrates that he cannot prepare his complaint without the specific information he seeks; and who demonstrates that he reasonably believes that the party from whom he seeks discovery has the information he needs.

Accordingly, I would affirm the Order of the Superior Court, holding that Appellant is not entitled to discovery under Pa.R.C.P. No. 4001(c) inasmuch as he requested it for purposes of determining the existence of an essential element of his cause of action. For the reasons stated herein, I respectfully dissent.

Justice EAKIN joins this dissenting opinion.

---

1. Until 1979, Pa.R.C.P. No. 4007 read that depositions that would "substantially aid" in the preparation of pleadings could be taken. This and other relevant Rules were amended in 1978, effective 1979. The allowance for pre-complaint is now set forth in Pa.R.C.P. No. 4001(c). *See supra*, pp. at 451–54, 894 A.2d at 1283–84. According to the 1978 Explanatory Note to Pa.R.C.P. No. 4001, the amendments were not intended to change the purposes of pre-complaint discovery.